UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

|  |  |
|---|---|
| EDWARD KASPER, *on behalf of himself and similarly situated persons*, | CASE NO. 1:18-cv-2895 |
| Plaintiffs, | |
| vs. | OPINION & ORDER [Resolving Doc. 12] |
| FORD MOTOR COMPANY, | |
| Defendant. | |

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Edward Kasper brings a disability discrimination class action against Ford Motor Company. Plaintiff Kasper claims that Ford's job application process discriminates against prospective applicants whose disabilities prevent them from navigating and using Ford's website. Defendant Ford moves to dismiss three of the six counts in the complaint and moves to strike the class allegations for all claims.[1]

For the following reasons, the Court **GRANTS** Defendant's motion to dismiss and **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to strike the class allegations.

I. Background

With his complaint, Plaintiff Kasper alleges that he has a cognitive disability and the cognitive disability makes it difficult for him to navigate websites and complete information-intensive tasks online, like online job applications. Defendant Ford typically only accepts job applications through the Ford website application portal, unless it grants a

---

[1] Doc. 12. Plaintiff Kasper opposes. Doc. 22. Defendant replies. Doc. 23.

disabled applicant's request for an accommodation.[2] Plaintiff alleges that he has tried to apply for Ford positions but has been unable to do so because of Ford's online application process and Ford's failure to respond to Plaintiff's accommodation requests.

Before this suit, Plaintiff filed disability discrimination charges against Ford relating to Ford's online application process in 2014 and 2017. Because the 2014 charge is time-barred,[3] the Court only recites the complaint's allegations relating to the 2017 events.

Ford's website has a hotline phone number that disabled persons may call to request an accommodation with Ford's application process.[4] Next to the hotline number on the website, a message states that callers should leave their contact information and details about the job opening that interests them.[5] Upon calling the hotline, a recorded message states that Ford will return the individual's call.[6]

Plaintiff alleges that Ford's website design makes the hotline number difficult to find and that Plaintiff was unable to locate it by himself.[7] Plaintiff claims that he was only able to call the hotline number to request help with the application process after receiving another's assistance.[8]

Plaintiff also claims that Ford never returns his calls because Ford requires hotline

---

[2] Compl., Doc. 1 ¶¶ 18–20, 35, 43, 46; Answer, Doc. 13 ¶¶ 28, 35.

[3] Docs. 12-2, 12-3. According to the 2014 charge, Plaintiff told a local Ford representative that Ford was unable to complete the online application because of his disability. Doc. 12-2. The Ford representative responded that he did not have any paper applications, that he could not help Plaintiff, and that Ford did not have any number that Plaintiff could call for assistance. *Id*. The representative also told Plaintiff that he might be able to find an application at the local unemployment office, *id.*, but Plaintiff alleges in his complaint that that office did not have any available Ford job openings, Doc. 1 ¶ 20.

[4] Doc. 1 ¶¶ 32–35; Doc. 13 ¶ 32. Plaintiff alleges that Ford added the hotline number in response to Plaintiff's 2014 charge against Ford. Doc. 1 ¶¶ 25–32.

[5] Doc. 1 ¶ 35; Doc. 13 ¶ 35.

[6] Doc. 1 ¶ 37; Doc. 13 ¶ 37.

[7] Doc. 1 ¶¶ 33–34.

[8] Doc. 1 ¶¶ 36–38.

callers to include information in the voicemail that Plaintiff's disability prevented him from obtaining.[9] Next to the hotline number on Ford's website, Ford tells callers to leave information about the job opening that interests them to receive a return call—online information that Plaintiff could not access.[10]

Plaintiff now sues Ford on behalf of himself and other prospective applicants with disabilities who attempted to access Ford's online application portal and were unable to apply for a Ford position.[11] Plaintiff, *inter alia*, makes federal and state disparate-impact and failure-to-accommodate class claims alleging that Ford's discriminatory conduct resulted in Ford's failure to hire Plaintiff and similarly situated disabled individuals.

## II. Discussion

Defendant Ford moves to dismiss Counts 3, 5, and 6 from Plaintiff Kasper's complaint. Ford also moves to strike the class allegations for all counts.

Plaintiff does not oppose certain parts of the motions. Accordingly, the Court grants Ford's uncontested request to dismiss the Title III Americans with Disabilities Act (ADA) claim (Count 5) and the stand-alone injunctive and declaratory relief request (Count 6). In addition, the Court grants Ford's uncontested request to limit the Ohio class definition to persons reachable by Ohio law.

Now for Defendant Ford's contested motion to dismiss Count 3 and Ford's contested motion to strike the class allegations in their entirety.

---

[9] Doc. 1 ¶¶ 37–41.
[10] Doc. 1 ¶ 35; Doc. 13 ¶ 35.
[11] Doc. 1 ¶¶ 2, 9.

Case No. 1:18-cv-2895
Gwin, J.

### A. The Court Grants Defendant's Motion to Dismiss the ADA Disparate Impact Claim

Defendant Ford moves to dismiss Plaintiff's ADA claim alleging that Ford's website has a disparate impact on certain disabled prospective applicants (Count 3). In support of this claim, Plaintiff alleges that Ford's website design prevented him from locating the reasonable accommodation hotline number without assistance. Plaintiff also alleges that Ford did not respond to his accommodation requests because—since Plaintiff's disability prevented Plaintiff from navigating and using websites—Plaintiff was unable to give Ford the job position information that Ford requested from disabled hotline callers.

Defendant Ford asks the Court to dismiss this ADA disparate impact claim because Plaintiff did not first exhaust his administrative remedies before filing suit on this claim. An ADA plaintiff must file a discrimination charge with the EEOC or state equivalent as a jurisdictional prerequisite to filing a claim in a civil action.[12] This exhaustion requirement notifies those charged with discrimination of allegations against them and gives them an opportunity to conciliate the charge without litigation.[13]

The pertinent question is whether Plaintiff administratively exhausted his ADA disparate impact claim with the 2017 charge. To satisfy the exhaustion requirement, the 2017 charge must explicitly include the claim or the claim must reasonably grow out of the 2017 charge.[14] The latter scenario is satisfied if the 2017 charge contained factual allegations that would prompt the EEOC to investigate the ADA disparate impact claim.[15]

Plaintiff's 2017 charge allegations do not explicitly include the website-focused

---

[12] *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998).
[13] *Id.*
[14] *Jones v. Sumser Ret. Vill.*, 209 F.3d 851, 853 (6th Cir. 2000).
[15] *Id.*; *Weigel v. Baptist Hosp. of E. Tennessee*, 302 F.3d 367, 379–381 (6th Cir. 2002).

ADA disparate impact claim that Plaintiff alleges in his complaint—namely, that Ford's website has disparately impacted Plaintiff because of his disability and has resulted in Ford's failure to hire Plaintiff.

Nor would the 2017 charge allegations have otherwise prompted the EEOC to investigate the claim. The 2017 charge states only that Plaintiff called the Ford hotline once and that Ford did not return his call:

> I am an individual with a disability. On June 24, 2017, I called the Ford hotline number and requested a reasonable accommodation with application process. I never received a return call.
>
> I believe I was discriminated against in violation of Title I of the Americans with Disabilities Act of 1990, as amended.[16]

This 2017 charge does not convey that Plaintiff experienced any difficulties accessing Ford's reasonable accommodation hotline number on Ford's website. In fact, Plaintiff does not mention the website at all.

Instead, Plaintiff represents that he successfully called the Ford hotline to ask for a reasonable accommodation. This implies that Plaintiff was able to access the hotline number. Without more, the EEOC would have no reason to investigate Ford's website.

Because Plaintiff has not exhausted his administrative remedies for the ADA disparate impact claim, the Court grants Defendant's motion to dismiss this claim.

## B. The Court Denies Defendant's Motion to Strike the Class Allegations

Defendant Ford moves to strike the class allegations for all claims.

The Court may strike class allegations before a class certification motion when a complaint itself shows that the potential class cannot meet Federal Rule of Civil Procedure

---

[16] Docs. 12-4, 12-5.

Case No. 1:18-cv-2895
Gwin, J.

23's requirements.[17] The Court only decides this class certification question before discovery when discovery could not fix a central defect in a class claim.[18]

Defendant Ford fails to show that Plaintiff's class allegations suffer from an irreparable defect that clearly makes class certification inappropriate.

In challenging the potential class's ascertainability, Ford relies on *its own assertions* that Ford has no records of prospective applicants who did not actually submit applications and that Ford could not identify these individuals by other means. While this may be true, the Court cannot simply take Ford at its word. This issue can await discovery.

The Court also does not share Ford's view that the class action vehicle is inappropriate simply because Plaintiff's class claims may require individualized determinations as to whether class members are legally "disabled." While this may be found true after discovery, it is premature to determine this issue at this time.

To accept this broad proposition now would be tantamount to saying that disability discrimination plaintiffs may never proceed as a class. And the class vehicle does not necessarily seem always inappropriate for claims like this. The complaint limits the potential class to prospective Ford applicants whose disabilities impeded their ability to apply using Ford's online application process. After conducting discovery, Plaintiff may further narrow or modify the definition as well.

Finally, despite Ford's representations to the contrary, Plaintiff need not include

---

[17] *See* Fed. R. Civ. P. 23(c)(1)(A) (requiring courts to decide class certification "[a]t an early practicable time" after the class claims are brought); *Johnson v. Geico Choice Ins. Co.*, No. 1:18 CV 1353, 2018 WL 6445617, at *4–5 (N.D. Ohio Dec. 10, 2018) (citing *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011)).

[18] *See Johnson*, 2018 WL 6445617, at *4 (citing *Pilgrim*, 660 F.3d at 949).

detailed factual allegations about other class members in the complaint. Accepting Plaintiff's allegations as true, Ford's online application process and Ford's failure to grant accommodation requests likely resulted in Ford failing to hire other similarly situated disabled persons besides Plaintiff. That is enough at the pleading stage.

## Conclusion

For the reasons stated, the Court **GRANTS** Defendant's motion to dismiss Counts 3, 5, and 6, as well Defendant's motion to strike the nationwide scope of the potential Ohio class. The Court otherwise **DENIES** Defendant's motion to strike the class allegations.

IT IS SO ORDERED.

Dated: March 22, 2019            *s/    James S. Gwin*
                                 JAMES S. GWIN
                                 UNITED STATES DISTRICT JUDGE